**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Fred Wallin, *on behalf of himself and all others similarly situated,* | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No.: |
| vs. | : |
| | : |
| Naturelo Premium Supplements LLC, | : |
| | : |
| Defendant. | : |
| | : |

For this Class Action Complaint, Plaintiff Fred Wallin, by undersigned counsel, states as follows:

## INTRODUCTION

1.      Defendant Naturelo Premium Supplements LLC ("Defendant" or "Naturelo") formulates, manufactures and advertises and sells "premium" magnesium dietary supplements throughout the United States that purport to contain 200 mg of magnesium "as Magnesium Glycinate Chelate" per capsule.

2.      However, it is impossible to fit 200 mg of magnesium derived from magnesium glycinate chelate in the sized capsules Naturelo uses; magnesium glycinate chelate simply possesses far too low a concentration of magnesium to do so.  Other forms of magnesium containing powder – such as magnesium oxide, which is often used to treat constipation, indigestion and other digestive symptoms – contain higher percentages of magnesium and thus

1

could fit within the capsule and deliver 200 mg of magnesium, but not magnesium glycinate chelate.

3.      Naturelo prominently displays the total magnesium contents of its supplements (the "Magnesium Supplements" or the "Supplements") – purportedly 200 mg of magnesium "as Magnesium Glycinate Chelate" per capsule – on the front and back of each product's label.

4.      But the Magnesium Supplements do not contain 200 mg of magnesium as magnesium glycinate chelate in each capsule and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels.   Instead, the Supplements contain significantly less magnesium as magnesium glycinate chelate than what is claimed and displayed or zero magnesium derived from magnesium glycinate chelate. As set forth below, it is physically impossible for the capsules Defendant uses for its Magnesium Supplement to contain the amount of claimed magnesium as magnesium glycinate chelate.   In misstating the actual magnesium content of the Supplements, Naturelo violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling. Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## PARTIES

5.      Plaintiff Fred Wallin ("Plaintiff") is and at all times relevant hereto was an adult individual residing in Westlake Village, Los Angeles County, California.   Plaintiff has purchased Naturelo's Magnesium Supplements within the last four years.   Plaintiff most recently purchased Defendant's Naturelo Supplements from Amazon in or around February 2022, and previously

purchased the Magnesium Supplements from a local pharmacy within Los Angeles County. Plaintiff viewed the front and back label of Defendant's Magnesium Supplements on each occasion that he purchased the product during the Class Period.

6.      Defendant Naturelo Premium Supplements LLC ("Naturelo" or "Defendant") is a Delaware limited liability company with a principal place of business at 440 US Highway 22, Suite 210, Bridgewater, New Jersey 08807. Naturelo markets, advertises, distributes and sells a magnesium nutritional supplement product throughout the United States, including California.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) from April 27, 2018, to April 27, 2022, alone Naturelo sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales were approximately $4,500,000 and, combined with Plaintiff's injunctive relief, punitive damages and likely attorneys' fees, the amount in controversy plausibly exceeds the $5,000,000 threshold, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states.

8.      Venue is proper in this district and this Court has general and specific jurisdiction over Naturelo because Naturelo's principal place of business is in New Jersey and Defendant's marketing, distributing and selling of the Magnesium Supplements occurred in New Jersey.

9.      Venue is proper in this Court as Naturelo's e Superior Court for the County of Los Angeles because Plaintiff resides in Los Angeles County and Plaintiff purchased Defendant's products and was exposed to Defendant's misrepresentations within Los Angeles County.

## **FACTUAL ALLEGATIONS**

### *a. Defendant misrepresents that one capsule of the Magnesium Supplement contains 200 mg of magnesium derived from magnesium glycinate chelate*

10.     The amount of magnesium contained within Defendant's Magnesium Supplements is material to any consumer seeking to purchase a magnesium supplement.

11.     Defendant purports to sell its Magnesium Supplements in the form of magnesium glycinate chelate.

12.     Naturelo advertises that "Magnesium is essential for helping both the body and the mind to relax. It regulates the contraction and relaxation of muscles, supporting healthy physical performance and helping to relieve tension and discomfort. It even supports your heart and blood vessels, helping to maintain healthy circulation and normal blood pressure. And magnesium plays an important role in the nervous system's relaxation response, regulating important neurotransmitters such as GABA and melatonin, which are essential for a calm mood and healthy sleep."[1]

13.     Defendant further advertises that "magnesium glycinate chelate" is a form of magnesium "that's easy for your body to absorb without stomach distress and enhances the natural calming benefits of magnesium."[2]

14.     Naturelo labels and advertises its Magnesium Supplements in a manner that highlights the amount of magnesium as magnesium glycinate chelate contained within.  The Supplements list the alleged magnesium content on the front label as well as on the back nutritional

---

[1] *See* https://naturelo.com/products/magnesium-glycinate-chelate (last visited Feb. 12, 2022).

[2] *See id.*

4

label. Such representations constitute an express warranty regarding the Magnesium Supplements' magnesium content.

15.    Indeed, as set forth in the images of the labels on the following pages, [3] "MAGNESIUM GLYCINATE CHELATE" is prominently displayed on the front label in font larger and offset from the other text on the label and the front label notes that there is "200 mg per capsule."

16.    Moreover, the Supplement Facts on the back label describe two ingredients: "Magnesium (as Magnesium Glycinate Chelate)" and a "Magnesium-Rich Plants Blend," comprised of spinach leaf, swiss chard leaf, okra fruit, quinoa grain, black bean, pumpkin fruit, sunflower seed, and flaxseed."

---

[3] All product images contained within this complaint were taken from Defendant's website, https://naturelo.com/products/magnesium-glycinate-chelate.

5





## Supplement Facts

Serving Size 1 Capsule
Servings Per Container 120

| Amount Per Serving | | % DV |
|---|---|---|
| Magnesium (as Magnesium Glycinate Chelate) | 200 mg | 48% |
| **Magnesium-Rich Plants Blend*** | 30 mg | ** |
| Organic Spinach Leaf | | |
| Organic Swiss Chard Leaf | | |
| Organic Okra Fruit | | |
| Organic Quinoa Grain (Chenopodium quinoa) | | |
| Organic Black Bean (Phaseolus vulgaris) | | |
| Organic Pumpkin Fruit | | |
| Organic Sunflower Seed | | |
| Organic Flaxseed | | |

** Daily Value (DV) not established.

**Other Ingredients:** Rice Flour (Brown), Hypromellose (Vegetarian Capsule), Rice Bran Extract

**Formulated and distributed by:**
NATURELO Premium Supplements
Bridgewater, NJ 08807, USA
1.800.560.8550
www.naturelo.com

◄Best Before See date on bottom.

17.    Upon information and belief, Naturelo labeled its Magnesium Supplement in a materially-identical manner throughout the Class Period.

18.    As set forth in the above images, the Magnesium Supplement labels claim that there is 200 mg of magnesium in each capsule derived from magnesium glycinate chelate.

19.    The Supplement Facts, which are required to declare the amount of magnesium, note that one (1) capsule of Defendant's Magnesium Supplement, which constitutes the recommended serving size, contains   "200 mg" of "Magnesium (as Magnesium Glycinate Chelate)."   See   https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/   (the   U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound.") (visited Feb. 17, 2022).

20.    The Supplement Facts also note that the listed 200mg of magnesium derived from magnesium glycinate chelate constitutes 48% of the recommended Daily Value of magnesium.[4] Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this   section."   21   C.F.R.   §   101.9(c)(8)(iii).   With   respect   to   magnesium,   the

---

[4] The Supplement Facts do not list the Daily Value of magnesium contained in the "Magnesium-Rich Plants Blend."

recommended Daily Value for adults and children over four years is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

21.     Thus, the Supplement Facts' representation that one Magnesium Supplement capsule allegedly contains 48% of the Daily Value of magnesium is consistent with its representation that there is allegedly 200 milligrams of magnesium in each capsule (200mg is 48% of 420mg).

22.     Further, the front label reinforces the false representations on the back label by likewise claiming that there is "200 mg per capsule."

**b. *Given the size of the capsules and the amount of magnesium contained within magnesium glycinate chelate, it is impossible for one capsule of the Magnesium Supplement to contain 200 mg of magnesium as magnesium glycinate chelate***

23.     Defendant's representations are false and misleading.

24.     It is impossible for one capsule of Defendant's Magnesium Supplement to contain the advertised and warranted 200 mg of magnesium as magnesium glycinate in light of (1) the amount of magnesium contained in magnesium glycinate chelate and (2) the maximum capacity of the capsules Defendant uses for its Magnesium Supplements.

25.     First, Defendant "use[s] Size 00 capsules" for its Magnesium Supplements.[5] While the amount of powder a capsule can contain may vary based on the density of the powder contained

---

[5] https://naturelo.com/products/magnesium-glycinate-chelate ("We use Size 00 capsules, which are 0.91 inches long by 0.33 inches wide (23 x 8 millimeters). Most people find that they go down easily with a big gulp of water. However, if you have trouble swallowing, you can easily open the capsule and sprinkle the powder onto your food or drink. Mixing the powder with a thick liquid such as yogurt, applesauce, or a smoothie works best.") (last visited Feb. 17, 2022).

therein, size 00 capsules hold approximately 735 mg of powder.[6] On the highest end of the density spectrum, a size 00 capsule can contain 1,092 mg of powder with a density of 1.2 g/ml; on the other end of the spectrum, size 00 capsules can fit up to 546 mg of powder with a density of 0.6 g/ml.[7]

26.     Second, magnesium glycinate contains only 14.1% magnesium by mass.[8] Accordingly, approximately 1,418 mg of magnesium glycinate is needed to obtain 200 mg of magnesium.

27.     Yet as set forth above, the size 00 capsules Defendant uses for its Magnesium Supplement cannot physically fit 1,418 mg of powder regardless of its density.

28.     Therefore, *even if* the only ingredient in the Magnesium Supplements were magnesium glycinate chelate and regardless of its density, there is necessarily less than 200mg of magnesium as magnesium glycinate chelate in each capsule.[9] [10]

---

[6] *See, e.g.,* https://capsuleconnection.com/capsule-sizing-info/ (last visited Feb. 17, 2022).

[7] *See id.*

[8] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited Feb. 17, 2022).

[9] For instance, if the magnesium glycinate contained a high density of 1.2 g/ml, 1,092 mg of magnesium glycinate chelate would fit within the size 00 capsule, containing approximately 154 mg of magnesium. On the other end of the spectrum, if the magnesium glycinate had a density of 0.6 g/ml, 546 mg would fit withing the size 00 capsule, containing approximately 77mg of magnesium. In both instances, significantly less than 200mg of magnesium derived from magnesium glycinate chelate can fit within a size 00 capsule.

[10] Tellingly, other size 00 capsule magnesium glycinate chelate supplements marketed and sold by other companies purport to contain significantly less magnesium than Naturelo's Magnesium Supplement.   For instance, one such magnesium glycinate chelate supplement's Supplement Facts states that "Each (size 00) vegetarian capsule contains: Magnesium (as magnesium glycinate) 120 mg." *See* https://www.pureencapsulationspro.com/magnesium-glycinate.html (last visited Feb. 17, 2022).

29.    However, in addition to magnesium glycinate chelate and 30 mg of a "Magnesium-Rich Plants Bend," each capsule of the Magnesium Supplement also contains non-active ingredients such as "Rice Flour (Brown)" and "Rice Bran Extract" which further lowers the amount of magnesium that can be contained within the size 00 capsules that Defendant uses.

30.    In light of the foregoing, Defendant's representations that one capsule or serving of the Magnesium Supplements contains 200mg of magnesium as magnesium glycinate chelate is false.

31.    Thus, to the extent that the Supplements contain some form of magnesium, such magnesium is not derived from magnesium glycinae chelate and instead must come from an alternative, undisclosed source of magnesium.   For instance, the magnesium may be derived from magnesium oxide, which contains a higher percentage of elemental magnesium than magnesium glycinate but which is less desirable to consumers because, inter alia, it is not absorbed by the body as well as magnesium glycinate chelate and therefore is less desirable to those consumers who seek to raise their magnesium levels.

32.    The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law.   The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).   In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal

authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

33.    Naturelo's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

34.    California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Food, Drug, and Cosmetic Law," Cal. Health & Safety Code § 109875, et seq. (the "Sherman Law").  The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as the food labeling regulations of Cal. Health & Safety Code § 110100(a). Accordingly, the Sherman Law also provides that food or nutritional supplements are misbranded if its labeling is "false or misleading in any particular." Id.

35.    Naturelo's representations regarding the magnesium contents of its Magnesium Supplement – including its representation that there are 200mg of magnesium derived from magnesium glycinate chelate in each capsule – are material. Reasonable consumers of magnesium supplements base their purchasing decisions on the advertised and warranted amount of magnesium contain therein and the source from which such magnesium is derived.  Consumer

12

specifically prize magnesium derived from magnesium glycinate chelate over other sources of magnesium because, as Defendant claims, it is a form of magnesium "that's easy for your body to absorb without stomach distress and enhances the natural calming benefits of magnesium." Additionally, consumers reasonably rely of Defendant's label to accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

36.    Further, such misrepresentations also breach Defendant's express warranty that each Magnesium Supplement contains magnesium "as Magnesium Glycinate Chelate" in the amount listed on its label (200 mg).

37.    The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products do not contain 200 mg of magnesium derived from magnesium glycinate chelate. The amount and source of actual magnesium provided, and the measure of magnesium per serving/capsule, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium supplementation – whether to "support[ ] healthy muscle and nerve function to help relieve tension and discomfort for healthy physical performance, recovery, and relaxation" or to "support[ ] the parasympathetic nervous system and help[ ] regulate melatonin and GABA for a healthy stress response, calm mood, and better sleep," as Naturelo

claims[11] – are left to ingest less magnesium as magnesium glycinate chelate than Defendant states will be provided, and are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium glycinate chelate promised by the Defendant.

38.     Because Plaintiff and Class Members purchased a product that contains less magnesium as magnesium glycinate chelate than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition  of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium as magnesium glycinate chelate actually delivered with the Supplements.

39.     On February 22, 2022, prior to initiating this action, Plaintiff's counsel sent a demand letter to Naturelo.   The letter, *inter alia,* (1) alleged that Naturelo mislabels and falsely misrepresents the contents of its Magnesium Supplements and the Supplements contain less magnesium than advertised in light of the amount of magnesium glycinate chelate that can be contained within the size 00 capsules Defendant uses for its Supplements; (2) alleged that Naturelo breached its written warranty and violated, *inter alia,* the California Consumer Legal Remedies Act, California Civil Code §§ 1770(a)(2), (5), (7) and (9), and Cal. Bus. & Prof. Code §§ 17200,

---

[11]  *See* https://naturelo.com/products/magnesium-glycinate-chelate (last visited Feb. 17, 2022).

et seq. and §§ 17500, et seq.; (3) alleged that Mr. Wallin and similarly situated consumers had been harmed and injured because they were misled into purchasing Naturelo's Magnesium Supplements and would have paid  significantly less for or not purchased the supplements had they known about the true magnesium content of the supplements; and (4) demanded that "Naturelo immediately cease the above unlawful practices, cease mislabeling and misbranding Naturelo's Magnesium Supplements," demanded that it "provide Mr. Wallin and all other United States purchasers of the Magnesium Supplements within the last four years with full restitution of all improper revenues and ill-gotten profits derived from Naturelo's wrongful conduct to the fullest extent permitted by law," and asserted that "purchasers of misbranded nutritional supplements like Mr. Wallin are entitled to a restitution refund of the purchase price of the misbranded supplements."

40.    In response to the above letter, Defendant denied Plaintiff's claims.

## CLASS ACTION ALLEGATIONS

### A.    **The Classes**

41.    Plaintiff brings this action on his own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

**Nationwide Class:** All persons in the United States who, from April 27, 2018, to the present, purchased Defendant's Magnesium Supplements.

**California Sub-Class:** All persons residing in California who, from April 27, 2018, to the present, purchased Defendant's Magnesium Supplements.

42.    Any legal entity, Defendant and its employees or agents are excluded from the Class.

**B.  Numerosity**

43.    Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, Plaintiff believes, and on that basis allege, that Naturelo has sold its Magnesium Supplements to thousands of California residents during the Class Period, thousands of more persons around the country and therefore there are thousands of members in the Classes.

**C.  Common Questions of Law and Fact**

44.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.   These questions include:

a.    Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

b.    Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant misrepresents that the Magnesium Supplements have benefits which they do not have; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c.      Whether Defendant's sale of the Magnesium Supplements constitutes misleading and deceptive advertising;

d.       Whether Defendant's sale of the Magnesium Supplements constitutes "unlawful," "unfair," or "fraudulent" business acts or practices under, *inter alia,* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, including: whether Defendant's sale of the Magnesium Supplements constitutes "unlawful" or "unfair" business practices by violating the public policies set out in Cal. Bus. & Prof. Code §§ 1770 *et seq.*, Cal. Bus. & Prof. Code §§ 17500 and other California and federal statutes and regulations; whether Defendant's sale of the Magnesium Supplements is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; and whether Defendant's sale of the Magnesium Supplements constitutes an "unfair" business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers;

e.      Whether Defendant concealed material facts concerning the Magnesium Supplements;

f.      Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Supplements.

g.      The nature and extent of damages, restitution, equitable remedies, and other relief to which Plaintiff and the Class are entitled; and

17

h.    Whether Plaintiff and the Classes should be awarded attorneys' fees and the costs of suit.

**D.   Typicality**

45.    The Plaintiff's claims are typical of the claims of the Classes since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

**E.   Protecting the Interests of the Class Members**

46.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

**F.   Proceeding Via Class Action is Superior and Advisable**

47.    A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation

18

increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

48.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
**Violation of New Jersey Consumer Fraud Act**
**(N.J.S.A. § 56:8-1, Et Seq.)**
**(On Behalf of Both Classes)**

49.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

50.     This claim is brought by Plaintiff on behalf of the Nationwide Class.

51.     Plaintiff and Class members are "persons" under the New Jersey Consumer Fraud Act ("CFA").

52.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

53.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

54.     Defendant's practices violated the CFA for, inter alia, one or more of the following reasons:

(a)     Defendant concealed from Plaintiff and the Classes the material fact concerning the composition of the Magnesium Supplements.

(b)    Defendant engaged in unconscionable commercial practices in failing to disclose that the Magnesium Supplements did not contain 200mg of magnesium as magnesium glycinate chelate.

55.    Defendant's unconscionable conduct described herein included the omission and concealment of material facts.

56.    Defendant intended that Plaintiff and the Classes rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Classes would purchase the Magnesium Supplements.

57.    Had Defendant disclosed all material information regarding the Magnesium Supplements to Plaintiff and the Classes, they would not have purchased Magnesium Supplements.

58.    The foregoing acts, omissions and practices proximately caused Plaintiff and the Classes to suffer an ascertainable loss in the form of, inter alia, money, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

59.    By failing to disclose and by actively concealing the material deficiency in its product, Defendant engaged in unfair and deceptive business practices in violation of the CFA.

60.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Magnesium Supplements were not as advertised or marketed.

61.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true nature and content of their product.

20

62.    Defendant knew or should have known that the Magnesium Supplements were falsely marketed and its conduct violated the CFA.

63.    Because Defendant fraudulently concealed the content of the Magnesium Supplements, Plaintiff and the Classes were deprived of the benefit of their bargain.

64.    Plaintiff suffered ascertainable loss caused by Defendant's misrepresentations and its concealment.

65.    As a direct and proximate result of Defendant's violations of the CFA, Plaintiff has suffered injury-in-fact and/or actual damage, as alleged above.

66.    Plaintiff seeks punitive damages against Defendant because Defendant's conduct was egregious and unconscionable.   Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.

67.    Because Defendant's unconscionable conduct caused injury to Plaintiff and Class members, Plaintiff and the Class members seek recovery of actual damages including diminution of value, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## SECOND CAUSE OF ACTION
### Fraudulent Concealment
### (On behalf of both Classes)

68.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

69.    By failing to disclose and concealing the contents of the Magnesium Supplements

from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include the amount of magnesium derived from magnesium glycinate chelate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

70.     Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium as magnesium glycinate chelate advertised and warranted and were not suitable for their intended use.

71.     Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

a.      Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the type of magnesium Defendant included in the Supplements;

b.      Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium as magnesium glycinate chelate advertised and warranted; and,

c.      Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

72.     On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

73.     The facts concealed or not disclosed by Defendant to Plaintiff and Class Members

are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

74.    Plaintiff and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

75.    By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

76.    Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium as magnesium glycinate chelate, they would not have purchased the Magnesium Supplements or would have paid less for them.

77.    As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

78.    Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

79.    Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

80.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchase

of falsely advertised and misbranded Magnesium Supplements.  Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving magnesium supplements of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

81.     Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Cal. Com. Code § 2313
### (On Behalf of the California Class)

82.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

83.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that the product contains 200mg of magnesium as magnesium glycinate chelate.

84.    The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

85.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

86.    Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate chelate, as alleged above.

87.    As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

## FOURTH CAUSE OF ACTION
**Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.- Untrue, Misleading and Deceptive Advertising
(On Behalf of the California Class)**

88.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

89.    At all material times, Defendant engaged in a scheme of offering the Magnesium Supplements for sale to Plaintiff, and other members of the Class by way of, inter alia, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

90.    These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

91.    Defendant's advertisements and other inducements come within the definition of advertising as contained in Cal. Bus. Prof. Code §§ 17500, et seq., in that such promotional materials were intended as inducements to purchase Defendant's Magnesium Supplements and are statements disseminated by Defendant to Plaintiff and other members of the Class.

92.    Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content, and specifically the amount of magnesium as magnesium glycinate chelate, were false, misleading and/or deceptive.

93.    Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

94.    The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of magnesium, and thus were violations of Cal. Bus. Prof. Code §§ 17500, et seq.

95.      Plaintiff and Class members were harmed and suffered injury as a result of Defendant's violations of the Cal. Bus. Prof. Code §§ 17500, et seq. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

96.      Accordingly, Plaintiff and members of the Class seek damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

**FIFTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* - Misrepresentation of a product's standard, quality, sponsorship approval, and/or certification**
**(On Behalf of the California Class)**

97.      Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

98.      Defendant's Magnesium Supplements are a "good" as defined by California Civil Code §1761(a).

99.      Defendant is a "person" as defined by California Civil Code § 1761(c).

100.     Plaintiff and California Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Magnesium Supplements for personal, family or household use.

101.    The sale of Defendant's Magnesium Supplements to Plaintiff and California Class members is a "transaction" as defined by California Civil Code §1761(e).

102.    By labeling their Magnesium Supplements as containing a specific amount of magnesium as magnesium glycinate chelate when in fact these products contained less than the advertised amount of magnesium, Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Magnesium Supplements.

103.    As a result of Defendant's conduct, Plaintiff and California Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or not falsely represented its Magnesium Supplements' magnesium content, Plaintiff and the California Class would not have been misled into purchasing Defendant's Magnesium Supplements, or, alternatively, would have paid  significantly less for them.

104.    Additionally, misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a refund of the purchase price of the misbrand nutritional supplements.

105.    Plaintiff provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendant correct such violations.   In response, Defendant denied that it violated the CLRA and failed to provide appropriate relief for its violations of the CLRA.   Therefore, Plaintiff seeks all available damages

under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

### SIXTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of the California Class)**

106.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

107.    The Sherman Law, Cal. Health & Safety Code §§ 109875 et seq., broadly prohibits the misbranding of any food or drug products.

108.    Defendant is a person within the meaning of Cal. Health & Safety Code § 109995.

109.    Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).   Federal statutes and regulations, including, but not limited to, 21 U.S.C. §§ 321, 343, prohibit the mislabeling and misbranding of food products, including nutritional supplements. See 21 U.S.C. § 321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter.").

110.    Federal statutes and regulations prohibit misleading consumers by misrepresenting a product's nutritional ingredients and including an ingredient or an amount of an ingredient on the Magnesium Supplements' nutritional labels that is not actually included in the products themselves.

111.    The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted above.

112.    The business practices alleged above are unlawful under Business and Professional Code §§ 17500, et seq., California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labelling of food products and dietary supplements.

113.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff and members of the Class have suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements' magnesium contents. Had Plaintiff and members of the Class known that Defendant's materials, advertisement and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements, they would not have purchased said products.   Likewise, Defendant's misleading and deceptive practices caused Plaintiff to purchase Defendant's Magnesium Supplements and/or pay more than they would have otherwise had they know the true nature of the contents of the Magnesium Supplements.

114.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed

or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded product.

## SEVENTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability Pursuant to Cal. Com. Code § 2314
(On Behalf of the California Class)**

115.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

116.    Defendant is a merchant with respect to the Magnesium Supplements.

117.    The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

118.    An implied warranty that the Magnesium Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Supplements.

119.    Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate chelate, do not provide the benefits associated with the warranted and advertised 200 mg of magnesium as magnesium glycinate chelate, and thus were not in merchantable condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

120.    Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

121.    As a result of Defendant's breach of the applicable implied warranties, purchasers

31

of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

a. An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c. An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d. An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e. Reasonable attorneys' fees and costs;

f. Pre-judgment and post-judgment interest, as provided by law;

g. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 7, 2022                          PLAINTIFF, Fred Walin

                              By:   */s/ Sergei Lemberg*  _____
                                    Sergei Lemberg
                                    LEMBERG LAW, LLC
                                    43 Danbury Road
                                    Wilton, CT 06897
                                    Telephone: (203) 653-2250
                                    Facsimile:   (203) 653-3424
                                    slemberg@lemberglaw.com
                                    *Attorneys for Plaintiff*